UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN WILSON,<br>Plaintiff<br><br>v.<br><br>ENTERGY NUCLEAR<br>OPERATIONS, INC.,<br>Defendant | Civil Action No. |

## COMPLAINT

## INTRODUCTION

This action is brought by plaintiff Kevin Wilson against his former employer, Entergy Nuclear Operations, Inc. ("Entergy"). Plaintiff alleges that Entergy retaliated against him by terminating him after he engaged in protected activity by: (1) serving as the lead plaintiff in *Wilson et al. v. Entergy Nuclear Operations, Inc.*, C.A. No. 14-10210-ADB, a prior civil action in this Court alleging that Entergy violated the Fair Labor Standards Act (" FLSA"), 29 U.S.C. §201 et seq. and the Massachusetts overtime law, G.L. c.151, §1A *et seq.*; and (2) making safety –related statements during an investigatory interview indicating that Entergy's senior security management knew or should have known that security supervisors were not complying with Entergy's armory procedures regarding arming and disarming. Plaintiff seeks reinstatement, lost wages and benefits, liquidated damages, damages for emotional distress, interest, attorneys' fees and expenses, and any other relief that the Court deems proper.

## PARTIES

1. Plaintiff Kevin Wilson ("Plaintiff") is a resident of Plymouth, Massachusetts.

2. Defendant Entergy Nuclear Operations, Inc. ("Defendant" or "Entergy") is a Delaware corporation with a usual place of business in Plymouth, Massachusetts.

## JURISDICTION AND VENUE

*3.* This is an action asserting claims, *inter alia*, pursuant to the anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §215(a)(3) and the Energy Reorganization Act, 42 U.S.C. §5851(a).

4. This Court has federal question jurisdiction over the matter pursuant to 28 U.S.C. §1331.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## STATEMENT OF FACTS

**6.** Entergy owns and operates the Pilgrim Nuclear Power Station ("Pilgrim Station"), a nuclear power station located in Plymouth, Massachusetts.

7. Plaintiff was employed by Entergy in the security department of Pilgrim Station from 2007 until July 1, 2015.

8. Plaintiff was originally hired as a nuclear security officer.

9. In March 2011 Plaintiff was promoted to the position of security shift supervisor (SSS).

10. As a SSS, Plaintiff's work performance consistently met or exceeded the stated expectations of Entergy.

11. For example in his performance review for the year ending March 31, 2013, Plaintiff's overall rating was "valuable contributor" and his manager wrote: "Kevin is progressing well as a supervisor. He should be ready to start assuming additional responsibilities, learning the duties and responsibilities of the Security Operations Supervisor."

12. In his performance review for the year ending February 28, 2014, Plaintiff's overall rating was "valuable contributor" and his manager wrote: "Kevin is becoming a leader among leaders. He has grasped the security operations and experience is teaching him to become well rounded. He has improved in the area of taken initiative and has become very effective in his communications skills."

13. In his performance review for the year ending December 31, 2014, Plaintiff's overall rating was "meets expectations." He was rated as "consistently outstanding" in the following areas: adaptability/flexibility; expert judgment and decision making; ownership and accountability; and clear direction.

14. During the time period in which Plaintiff was a SSS, he generally received annual bonuses which were in part based on his individual performance.

15. On January 28, 2014, Plaintiff and 15 other SSS's filed a complaint in this Court, docketed as Civil Action No. 14-10210-AD, *Wilson et al. v. Entergy Nuclear Operations, Inc.* (the "FLSA Action").

16. In their complaint, as amended. Plaintiff and the other SSSs alleged that Entergy had violated the Fair Labor Standards Act (" FLSA"), 29 U.S.C. §201 et seq. and the Massachusetts overtime law, G.L. c.151, §1A *et seq.,* by failing to pay overtime pay to the SSSs. Docket entry #4, Civil Action No. 14-10210-AD.

17. Following a mediation conducted on May 21 and June 1, 2015, the parties settled the FLSA Action. Docket entry #46, Civil Action No. 14-10210-AD.

18. The Court (Burroughs, J.) entered an order on November 5, 2015 approving the settlement of the FLSA Action. Docket entry #46, Civil Action No. 14-10210-AD.

19. The conduct of Plaintiff in filing and serving as lead plaintiff in the FLSA Action

constitutes protected activity under the FLSA which prohibits retaliation against an employee who "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."

20. On information and belief, Entergy's management, including but not limited to Security Superintendent Richard Daly and Security Manager Phil Beabout, were fully aware that Plaintiff had engaged in such protected activity and referred to him as the "lead plaintiff" in the FLSA Action.

21. In March and April 2015, Entergy conducted an internal investigation into alleged noncompliance by SSSs with respect to armory procedures.

22. Specifically, the investigation concerned the practice by SSSs of exchanging weapons (pistols) and arming and disarming each other at locations other than the armory at Pilgrim Station, allegedly in violation of Entergy procedures.

23. The alleged noncompliance by SSSs with armory procedures implicated safety concerns and issues of safety compliance.

24. On or about April 15, 2015, Plaintiff was interviewed as part of the investigation.

25. Present at the interview were a representative from a law firm (Morgan, Lewis & Bockius LLP) retained by Entergy to conduct the investigation, along with an employee of Entergy, Employee Concerns Coordinator Kristi Lowther.

26. At the interview on April 15, 2015, Plaintiff stated that Entergy's management, including Security Superintendent Richard Daly must have been aware of the alleged violation of the armory weapons procedures. Plaintiff further stated that relevant information regarding the practice (including badge and access records) were contained in reports given on a regular basis to Entergy management, including Mr. Daly. Ms.

Lowther responded to his statement about Mr. Daly's knowledge by saying "he's right" or words to that effect.

27. The investigator's report specifically refers to the belief of certain SSSs that "Security management must have known and thus accepted SSSs' exchanges of pistols outside of the armory," which is exactly what Plaintiff stated during his interview.

28. The investigator's report notes that both Security Superintendent Richard Daly and Security Manager Phil Beabout were responsible for ensuring that security activities are conducted in accordance with procedures and that "even if they may not have observed SSSs exchanging pistols … [they] could have discovered the failure to exchange Weapons Receipt Cards or the incomplete Weapons Logs in any random review of the armory or daily records."

29. The statements made by Plaintiff during the interview on April 15, 2015 constitute protected activity under the Energy Reorganization Act, because they directly impact and implicate safety and safety procedures at Pilgrim Station.

30. The statements made by Plaintiff during the interview on April 15, 2015 constitute protected activity under the Energy Reorganization Act, because they constitute actions to carry out the purposes of the Energy Reorganization Act.

31. On information and belief, Entergy's management, including but not limited to Security Superintendent Richard Daly and Security Manager Phil Beabout, were fully aware that Plaintiff had engaged in such protected activity.

32. On or about July 1, 2015, Plaintiff was terminated from his employment with Entergy. Among the individuals who participated in the decision to terminate the Plaintiff were Security Superintendent Richard Daly and Security Manager Phil Beabout.

33. The reason given for the termination was that Plaintiff allegedly distributed confidential information belonging to a co-worker in violation of Entergy policy.

34. However, Plaintiff believes and alleges that the reason cited by Entergy was pretextual and was not the true reason for his termination.

35. Plaintiff believes and alleges that his participation in the protected activities described above was the true reason for his termination and that his protected activities were a contributing factor in his termination.

36. The pretextual nature of the termination is shown by the fact that on at least one other occasion, an Entergy employee who had not engaged in protected activity was not terminated or disciplined even though she violated Entergy policy by widely distributing confidential information including employees' names, salaries and job titles.

37. On or about December 15, 2015, Plaintiff filed an administrative complaint with the United States Department of Labor Occupational Safety and Health Administration ("OSHA"), alleging that his termination violated the Energy Reorganization Act.

38. On or about February 28, 2017, Plaintiff notified the Assistant Secretary of Labor, OSHA, that he intended to file an action at law or equity for *de novo* review in this Court pursuant to 29 CFR § 24.114.

39. As of February 28, 2017, although more than one year had passed since Plaintiff filed his administrative complaint under the Energy Reorganization Act, no final order of the Secretary of Labor had issued and said delay was not due to the bad faith of the Plaintiff.

**COUNT I – RETALIATION IN VIOLATION OF 29 U.S.C. § 215(a)(3)**

40. Plaintiff repeats and incorporates by reference the allegations contained in each of the above paragraphs.

**41.** As set forth above, Entegy's termination of Plaintiff for seeking to enforce his rights and the rights of his co-workers under the Fair Labor Standards Act, 29 U.S.C. § 203(m), constitutes retaliation in violation of 29 U.S.C. § 215(a)(3). This claim is brought pursuant to 29 U.S.C. § 216(b).

**COUNT II – RETALIATION IN VIOLATION OF G.L. c.151, §19**

42. Plaintiff repeats and incorporates by reference the allegations contained in each of the above paragraphs.

43. As set forth above, Entergy's termination of Plaintiff for seeking to enforce his rights and the rights of his co-workers under the Massachusetts overtime law, G.L. c. 151, §§ 1A and 20, constitutes retaliation in violation of Mass. Gen. L. c. 151, §19.

**COUNT III – VIOLATION OF ENERGY REORGANIZATION ACT**

44. Plaintiff repeats and incorporates by reference the allegations contained in each of the above paragraphs.

45. Plaintiff was subjected to retaliation in violation of the Energy Reorganization Act, 42 U.S.C. § 5851(a), when Defendant terminated his employment based on in whole or in part on statements made by him during an investigatory interview which directly impact and implicate safety and safety procedures at Pilgrim Station, which statements constitute actions to carry out the puposes of the Energy Reorganization Act.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1. Declare that Defendant has violated 29 U.S.C. § 215(a)(3), G.L. c.151, §19, and 42 U.S.C. § 5851(a) as specified above;
2. Order the reinstatement of Plaintiff, with restitution of all back pay, front pay and lost benefits, and damages for emotional distress, plus pre- and post- judgment interest;
3. Liquidated damages as provided for by 29 U.S.C. § 216(b);
4. Attorneys' fees and costs; and,
5. Such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues triable as of right to a jury.

PLAINTIFF
By his attorneys,

/s/ Howard M. Brown
Howard M. Brown, BBO# 547948
hmb@bostonemploymentlaw.com
Boston Employment Law PC
1170 Beacon Street, Suite 200
Brookline MA 02446
(617) 566-8090 (telephone)
(617) 566-8091 (facsimile)

Dated: May 16, 2017