UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEVIN WILSON,                                    *
                                                 *
            Plaintiff,                           *
                                                 *
      v.                                         *        Civil Action No. 17-cv-10877-ADB
                                                 *
ENTERGY NUCLEAR OPERATIONS, INC.,                *
                                                 *
            Defendant.                           *

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

BURROUGHS, D.J.

      In this retaliation suit, Plaintiff Kevin Wilson alleges that his former employer, Defendant

Entergy Nuclear Operations, Inc. ("Entergy"), terminated him in retaliation for participating in a

lawsuit alleging a violation of the Fair Labor Standards Act ("FLSA") and for providing

information as part of an internal investigation.  [ECF No. 1 ("Complaint" or "Compl.") ¶¶ 1,

40–41].  He alleges that his termination violated the FLSA, Massachusetts General Laws ch. 151,

§ 19 ("Wage Act") and the Energy Reorganization Act ("ERA").  [Id. ¶¶ 43, 45].  Currently

pending before the Court is Entergy's motion for summary judgment.  [ECF No. 34].  For the

reasons set forth below, summary judgment is DENIED.

I.    **BACKGROUND**

      A.    **Factual Background**

      The following facts are either uncontroverted pursuant to Federal Rule of Civil Procedure

56 and Local Rule 56.1,[1] or stated in the light most favorable to Mr. Wilson, the non-movant.

---

[1] Entergy, as the moving party, filed "a concise statement of the material facts of record as to
which the moving party contends there is no genuine issue to be tried . . . ."  LR, D. Mass 56.1;
[ECF No. 36 ("SOF")].  Mr. Wilson provided a paragraph-by-paragraph response to Entergy's

Entergy operates Pilgrim Nuclear Power Station ("Pilgrim Station"), a nuclear power station located in Plymouth, Massachusetts.  [ECF No. 9 ¶ 6].  Entergy employed Mr. Wilson in the security department at Pilgrim Station between January 1, 2007 and July 9, 2015.  [Id. ¶ 7].  Entergy hired Mr. Wilson as a nuclear security officer and promoted him to the position of security shift supervisor ("SSS") in 2011.  [Id. ¶¶ 8–9].

On January 28, 2014, Mr. Wilson was one of sixteen SSSs from Pilgrim Station who filed an FLSA lawsuit against Entergy alleging misclassification ("FLSA Litigation").  [ECF No. 36 ("SOF") ¶ 39].  The FLSA Litigation was one of eight similar misclassification lawsuits filed around the country.  [SOF ¶ 43].  Mr. Wilson was a named plaintiff, and his name appeared in the case caption.  [SOF ¶ 40].  Managers at Entergy, including security superintendent Richard Daly, security manager Philip Beabout, and human resources manager Brenda Gailes knew that a group of SSSs had filed a lawsuit. [SOF ¶ 41; ECF No. 46 ¶¶ 12–14].  The FLSA Litigation was settled on or around June 1, 2015, and the action was dismissed on November 5, 2015.  [SOF ¶ 49].

On March 4, 2015, Entergy received an anonymous complaint concerning compliance with armory procedures and the exchange of weapons by SSSs.  [SOF ¶ 51].  Entergy retained Morgan, Lewis & Bockius LLP to conduct an investigation into the allegations ("Armory

---

SOF listing the factual assertions that he denies as well as his own "Statement of Material Facts." [ECF Nos. 45, 46].  Local Rule 56.1 requires a party opposing a motion for summary judgment to provide "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried." LR, D. Mass 56.1.  This may take the form of a paragraph-by-paragraph rebuttal or "a statement of facts [the opposing party] believe are still under dispute."  Evergreen Partnering Grp., Inc. v. Pactiv Corp., 832 F.3d 1, 4 n.2 (1st Cir. 2016).  Here, Mr. Wilson's list of the factual allegations that he denies comports with Local Rule 56.1, but his "Statement of Material Facts" does not.  Accordingly, the Court relies on Mr. Wilson's paragraph-by-paragraph rebuttal and only considers his "Statement of Material Facts" to the extent it identifies a disputed material fact with the support required by Local Rule 56.1.

Investigation"). [SOF ¶ 51]. The Armory Investigation concluded that procedural violations had occurred and were a common practice among security personnel but that there was no evidence of deliberate or willful violations. [SOF ¶¶ 51, 53]. Mr. Wilson did not file the anonymous complaint that triggered the Armory Investigation. [SOF ¶ 52]. As a result of the finding that security personnel had violated Entergy's policy regarding the exchange of weapons, all SSSs had $500 deducted from their discretionary bonuses. [SOF ¶ 54]. The Armory Investigation did not implicate Mr. Daly, Mr. Beabout, Ms. Gailes, director of performance improvement Dave Noyes, or senior human resources representative Brandy Green. [SOF ¶ 56].

In the spring of 2015, Entergy conducted an investigation into how an Excel workbook containing the salary of all employees at Pilgrim Station was transmitted to some of the SSSs. [SOF ¶ 7]. The investigation involved a review of email activity for all SSSs who had received an email with the Excel workbook attached. [SOF ¶ 8]. During this review, the investigators revealed that Mr. Wilson had forwarded the Excel workbook and confidential information belonging to Daniel Nugent, a fellow employee, to his personal email account. [SOF ¶ 8].

Nick Tranchina and Gillian Taylor, both from Entergy's Internal Audit Services department, were assigned to investigate the forwarding of Mr. Nugent's personal information ("Nugent Investigation"). [SOF ¶ 10]. Their investigation revealed that, on December 16, 2014, Mr. Wilson had sent a scan of Mr. Nugent's documents from a Xerox scanner to his Entergy email account. [SOF ¶¶ 11–13]. Two days later, on December 18, 2014, Mr. Wilson used his Entergy e-mail account to send a copy of Mr. Nugent's driver's license and Social Security card to his personal email account . [SOF ¶¶ 9, 11]. Based on differences in the scans attached to the December 16 and December 18 emails, the investigators concluded that Mr. Wilson had made two different scans of Mr. Nugent's documents. [SOF ¶ 12]. Mr. Nugent, who was interviewed

as part of the investigation, explained that Mr. Wilson had assisted him in submitting documents to Human Resources as part of an onboarding process.  [SOF ¶ 16].  Mr. Wilson's distribution of Mr. Nugent's personal information was a violation of Entergy's Protection of Information Policy, which Mr. Wilson was aware of at the time.  [SOF ¶¶ 1–6, 14].  Mr. Wilson agreed that sending Mr. Nugent's personal information to his personal account was a violation of Entergy's Protection of Information Policy.  [SOF ¶ 30].

At a consensus meeting following the conclusion of the Nugent Investigation, Ms. Gailes, Mr. Beabout, Mr. Daly, Mr. Noyes, and Ms. Green decided to terminate Mr. Wilson's employment.  [SOF ¶ 33].  The parties dispute whether the attendees of the consensus meeting considered Mr. Wilson's participation in the FLSA lawsuit or his participation in the Armory Investigation.  See [SOF ¶ 34; ECF No. 45 ¶ 34; ECF No. 46 ¶¶ 63–74].  Following the consensus meeting, Entergy's Executive Review Board ("ERB") reviewed the decision to terminate Mr. Wilson and found the proposed termination to be legitimate and non-retaliatory. [SOF ¶¶ 35–36].  Entergy terminated Mr. Wilson effective July 9, 2015 "for sending confidential information belonging to a co-worker without [a] legitimate need to do so in the performance of Entergy business."  [SOF ¶ 37].

### B.    Procedural History

On December 15, 2015, Mr. Wilson filed an administrative complaint with the Occupational Safety and Health Administration ("OSHA") at the U.S. Department of Labor alleging that his termination violated the ERA.  [Compl. ¶ 37].  On February 28, 2017, Mr. Wilson notified OSHA that he intended to file an action for *de novo* review pursuant to 29 C.F.R. § 24.114 because more than one year had passed since he had filed his administrative complaint and the Secretary of Labor had not yet issued a final order.  [Id. ¶¶ 38–39].

On May 16, 2017, Mr. Wilson filed the Complaint in this Court.  [ECF No. 1].  Entergy answered on July 17, 2017, and amended its answer on July 18, 2017.  [ECF Nos. 7, 9].  On October 11, 2018, fact discovery closed, and on November 8, 2018, Entergy filed its motion for summary judgment.  [ECF Nos. 29, 34].  On December 10, 2018, Mr. Wilson filed an opposition to the motion for summary judgment.  [ECF No. 44].  Entergy filed a reply on January 10, 2019, and Mr. Wilson filed a sur-reply on January 29, 2019.  [ECF Nos. 52, 56].

## II.    LEGAL STANDARD

Summary judgment is appropriate where the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if its resolution might affect the outcome of the case under the controlling law."  Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).  "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way."  Id.

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial."  Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015).  "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'"  Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  Once the movant takes the position that the record fails to make out any trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions."  Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

In reviewing the record, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6.  The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III.     DISCUSSION

### A.     Retaliation in Violation of the FLSA

"The FLSA prohibits covered employers from retaliating against an employee who has 'filed any complaint or instituted or caused to be instituted any proceeding under or related to' the FLSA." Mogilevsky v. Wellbridge Club Mgmt., Inc., 905 F. Supp. 2d 405, 410–11 (D. Mass. 2012) (quoting 29 U.S.C. § 215(a)(3)).  Where, as here, there is no direct evidence of a defendant's retaliatory animus, a plaintiff's retaliation claim under the FLSA is analyzed under the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Mogilevsky, 905 F. Supp. 2d at 411.  Step one requires the plaintiff to establish a *prima facie* case of retaliation under the relevant statute.  McDonnell Douglas, 411 U.S. at 802.  If the plaintiff is able to establish a *prima facie* case, an inference of discrimination arises and, at step two, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory

reason for the termination and to produce credible evidence to show that the reason advanced

was legitimate. Id. at 802–03. "If the defendant makes the requisite showing, the ultimate

burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and

that the job action was the result of the defendant's retaliatory animus." Mogilevsky, 905 F.

Supp. 2d at 411 (internal quotation marks omitted).

A *prima facie* case of retaliation under the FLSA "require[s], at a minimum, a showing

that (1) the plaintiff engaged in a statutorily protected activity, and (2) his employer thereafter

subjected him to an adverse employment action (3) as a reprisal for having engaged in protected

activity." Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004)

(quoting Blackie v. Maine, 75 F.3d 716, 722 (1st Cir. 1996)); see Orta-Castro v. Merck, Sharp &

Dohme Quimica P.R., Inc., 447 F.3d 105, 113–14 (1st Cir. 2006). "To satisfy the third element,

'a plaintiff must proffer evidence from which a reasonable factfinder could infer that the

employer retaliated against him for engaging in the protected activity,'" Reardon v. Mass. Gen.

Hosp., No. 09-cv-11900-JLT, 2012 WL 948425, at *4 (D. Mass. Mar. 19, 2012) (quoting

Blackie, 75 F.3d at 723). "In other words, the record must enable the trier plausibly to find that

'a causal connection existed *between the protected conduct and the adverse action*." Blackie, 75

F.3d at 723 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)).

There can be no dispute that Mr. Wilson has established the first two elements of his

*prima facie* case of FLSA retaliation. His participation as a lead plaintiff in the FLSA Litigation

challenging Entergy's classification of SSSs constitutes protected activity and satisfies the first

element. See 29 U.S.C. § 215(a)(3) ("[I]t shall be unlawful . . . for any person to discharge or in

any other manner discriminate against any employee because such employee has filed any

complaint or instituted or caused to be instituted any proceeding under or related to this

chapter."); Claudio-Gotay, 375 F.3d at 102 ("[O]ther circuits have held, and we agree, that 'it is the assertion of statutory rights . . . by taking some action adverse to the company . . . that is the hallmark of protected activity under [the FLSA].'" (quoting McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996))); [SOF ¶¶ 39–40].  He was also terminated, which satisfies the second element.  See Kearney v. Town of Wareham, 316 F.3d 18, 23 (1st Cir. 2002); [SOF ¶ 37].

The parties dispute whether Mr. Wilson has "proffer[ed] evidence from which a reasonable factfinder could infer that the employer retaliated against him for engaging in the protected activity."  Blackie, 75 F.3d at 723.  Entergy argues that summary judgment is proper because Mr. Wilson cannot prove that his termination was casually related to his protected activity and contends that "[t]he mere fact that an adverse action followed protected conduct is not sufficient to make out a causal link."  [ECF No. 35 at 9–11 (internal quotation marks omitted)].  It is undisputed that at least some managers at Entergy knew that SSSs, including Mr. Wilson, were involved in the FLSA Litigation.  [SOF ¶ 41; ECF No. 45 ¶ 41].  Entergy responds that "none of the participants in the consensus meeting considered the fact that [Mr. Wilson] was a participant in the FLSA Lawsuit" and that Mr. Wilson's participation in the lawsuit "did not play any factor in the group's termination recommendation," which Mr. Wilson disputes.  See [SOF ¶ 34; ECF No. 45 ¶ 34; see also [SOF ¶ 38].  Entergy presents a variety of other factors which were considered by the participants in the consensus meeting, including the findings of the Nugent Investigation.  See [SOF ¶ 34].  Entergy also presents evidence that the ERB reviewed the termination and found that it was "legitimate and non-retaliatory" in light of the substantiation of Mr. Wilson's violation of Entergy's Protection of Information Policy.  [SOF ¶ 36].  In response, Mr. Wilson points to the temporal proximity between his participation in the FLSA Litigation and his termination.  [ECF No. 44 at 6–7].  He argues that he "was terminated

while he was engaged in the protected activity," and that his termination was "simultaneous" with his protected activity because the FLSA Litigation was not dismissed until after his termination.  [ECF No. 44 at 7].[2]

"Temporal proximity can create an inference of causation in the proper case.  But to draw such an inference, there must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action."  Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 85 (1st Cir. 2006) (citations omitted).  "A showing of adverse action soon after an employee engages in protected activity is evidence that there is a causal connection between the adverse action and the protected activity."  Cheng v. IDEAssocs., Inc., No. 96-cv-11718–PBS, 2000 WL 1029219, at *5 (D. Mass. July 6, 2000).  "Case law draws no bright lines as to what constitutes a time period brief enough to permit an inference of retaliation."  Id. (collecting cases).

Here, a reasonable factfinder could infer from the sequence of events presented in the record that Entergy terminated Mr. Wilson in retaliation for his participation in the FLSA Litigation and not simply because of his violation of Entergy's Protection of Information Policy. At the time of the consensus meeting, at least Mr. Daly, Mr. Beabout, and Ms. Gailes were aware that Mr. Wilson was involved in the FLSA Litigation.  See [SOF ¶ 41; ECF No. 46 ¶¶ 12–14].

---

[2] Mr. Wilson also asserts that causation can be demonstrated by a showing that he was treated differently than similarly-situated employees.  [ECF No. 44 at 7–13].  The Court reserves its analysis of comparators, which is more commonly addressed at the third step of McDonnell Douglas.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973) (describing comparative evidence as "[e]specially relevant" to a showing of pretext); Mesnick v. Gen. Elec. Co., 950 F.2d 861, 824 (1st Cir. 1991) (identifying evidence of differential treatment as a type of circumstantial evidence to show that an employer's proffered reasons is a pretext); see also Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) ("[I]n disparate treatment cases, comparative evidence is to be treated as part of the pretext analysis, and not as part of the plaintiff's prima face case.").

The FLSA Litigation was settled on June 1, 2015, and the case was ultimately dismissed on November 5, 2015, [SOF ¶ 49]; Mr. Wilson was terminated during this time period by individuals with knowledge of the case.

In short, Entergy and Mr. Wilson present two versions of events, and these differing narratives demonstrate a disputed issue of material fact that precludes summary judgment.  The Court does not need to proceed to the second and third steps of the McDonnell Douglas  analysis but observes that the record is replete with factual issues concerning pretext that also would have prevented summary judgment.  The issue of Entergy's motives for terminating Mr. Wilson is disputed and must be decided by a jury.  See, e.g., Mogilevsky, 905 F. Supp. 2d. at 413 ("[W]here the issue at bottom comes down to a determination of [an employer's] 'motive and intent,' the court's mandate is to defer to the jury as the ultimate finder of fact.").  The Court therefore denies summary judgment on Mr. Wilson's FLSA retaliation claim.

### B.      Retaliation in Violation of Mass. Gen. Laws ch. 151, § 19

To establish retaliatory termination in violation of Massachusetts General Laws ch. 151, § 19, a plaintiff must demonstrate that "(1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity."  Karatihy v. Commonwealth Flats Dev. Corp., 995 N.E.2d 819, 821–22 (Mass. App. Ct. 2013) (citing Mole v. Univ. of Mass., 814 N.E.2d 329, 338–39 (Mass. 2004)).[3]

---

[3] Massachusetts General Laws ch. 149, § 150 provides that

> [a]n employee claiming to be aggrieved by a violation of . . . section 19 of chapter 151 may, 90 days after the filing of a complaint with the attorney general, or sooner if the attorney general assents in writing, and within 3 years after the violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits.

Mass. Gen. Laws. ch. 149, § 150.  Although the Complaint does not allege that Mr. Wilson

The parties do not contest that Mr. Wilson engaged in activity protected by the Wage Act; therefore, the Court assumes without deciding that the first element of the *prima facie* case is met.  See, e.g., [ECF No. 35 at 11 (contesting only casual connection element); ECF No. 44 at 5 (arguing that Mr. Wilson's participation in the FLSA Litigation is "protected activity" under both the FLSA and the Wage Act)].  Mr. Wilson's termination easily establishes the second element of his *prima facie* case.  As above, the parties dispute whether the record demonstrates the requisite casual connection between Mr. Wilson's protected activity and his termination.  For the reasons discussed in detail in Section II.A. supra, the Court concludes that there is a genuine issue of material fact as to whether Entergy's knowledge of Mr. Wilson's protected activity motivated its decision to terminate him.  Accordingly, the Court denies summary judgment on Mr. Wilson's Wage Act retaliation claim.

### C.     Retaliation in Violation of Energy Reorganization Act, 42 U.S.C. § 5851(a)

"The ERA forbids employer retaliation against employees who report violations of nuclear safety regulations."  Smith v. U.S. Dep't of Labor, 674 F. App'x 309, 314 (4th Cir. 2017) (citing 42 U.S.C. § 5851(a)(1)(A)).  Specifically, the ERA prohibits employers from discharging an employee "because the employee . . . assisted or participated . . . in any other action to carry out the purposes of this chapter or the Atomic Energy Act of 1954 . . . ."  42 U.S.C. § 5851(a).

---

brought his retaliation claim to the state attorney general before filing suit, this does not bar his claim at this time.  See Depianti v. Jan-Pro Franchising Int'l, Inc., 990 N.E.2d 1054, 1062 (Mass. 2013) (holding, on a certified question regarding wage claims brought under ch. 151, "that failure to file a complaint with the Attorney General before initiating a private suit for alleged employment violations does not interfere with the accomplishment of the statutory purposes of § 150 to a substantial degree, at least where the Attorney General is notified of the suit during its pendency").  But see DeBarros v. Areas USA Bos., LLC, No. 18-cv-10265-FDS, 2018 WL 1904182, at *6 (D. Mass. Apr. 20, 2018) (dismissing Mass. General Laws ch. 151, § 19 retaliation claim as time-barred and noting that "the complaint does not allege that plaintiff first brought his retaliation claim to the state attorney general as required by statute").

The First Circuit has not articulated the elements of a *prima facie* case of retaliation under the ERA, but several other circuits have reached consensus that the claim requires an employee to show that "(1) he engaged in a protected activity; (2) the respondent knew or suspected . . . that the employee engaged in the protected activity; (3) [t]he employee suffered an adverse action; and (4) [t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." Sanders v. Energy Nw., 812 F.3d 1193, 1197 (9th Cir. 2016); see Vander Boegh v. EnergySolutions, Inc., 536 F. App'x 522, 528 (6th Cir. 2013) ("[T]he ERA requires the plaintiff to demonstrate that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) the protected activity was a 'contributing factor' in the adverse employment action."); Couty v. Dole, 886 F.2d 147, 148 (8th Cir. 1989) ("A prima facie case of retaliatory discharge is established when the plaintiff shows: (1) engagement in protected activity; (2) defendant's awareness of plaintiff's engagement in protected activity; (3) plaintiff's subsequent discharge; and (4) that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive.").

Mr. Wilson alleges that his termination was unlawful retaliatory conduct under the ERA because it was "based . . . in whole or in part on statements made by him during an investigatory interview which directly impact and implicate safety and safety procedures at Pilgrim Station." [Compl. ¶ 45]. His position is that the statements he made during the Amory Investigation "constitute actions to carry out the purposes of the [ERA]." [Id.]. Because the parties do not contest the issue, the Court assumes without deciding that this activity constitutes protected activity under the "catch-all" provision of the ERA and that Mr. Wilson has met the first element of a *prima facie* case. See [ECF No. 35 at 11 (contesting only causal connection element); ECF No. 44 at 5–6 (arguing that Mr. Wilson's participation in the Armory Investigation constitutes

protected activity)]; see also Ind. Mich. Power Co. v. U.S. Dep't of Labor, 278 F. App'x 597,

603 (6th Cir. 2008) ("To constitute protected activity under the ERA, 'an employee's acts must

implicate safety definitively and specifically.'" (quoting Am. Nuclear Res., Inc. v. U.S. Dep't of

Labor, 134 F.3d 1292, 1295 (6th Cir. 1998))).  Entergy also does not contest that it was aware of

Mr. Wilson's participation in the Armory Investigation; therefore, the Court finds that the second

element is also met.  See [ECF No. 35 at 15 ("It is undisputed that, at the time of Plaintiff's

termination, [Entergy] was aware that [Mr. Wilson] . . . had been interviewed in the Armory

Investigation.")].  Finally, it is clear that Mr. Wilson suffered an adverse action when he was

terminated, which establishes the third element of a *prima facie* case.

This brings the Court to the fourth element of a *prima facie* case: that the circumstances

raise the inference that Mr. Wilson's protected activity was a contributing factor in Entergy's

decision to terminate him.  See Sanders v. Energy Nw., 812 F.3d at 1197.  Several courts have

defined "contributing factor" in this context as meaning "any factor which, alone or in

connection with other factors, tends to affect in any way the outcome of the decision."  See

Addis v. U.S. Dep't of Labor, 575 F.3d 688, 691 (7th Cir. 2009) (quoting Marano v. Dep't of

Justice, 2 F.3d 1137, 1140 (Fed. Cir. 1993)); Allen v. Admin. Review Bd., 514 F.3d 468, 476 n.3

(5th Cir. 2008) (similar).  Although this element is not identical to the "casual connection"

required by FLSA and Wage Act retaliation claims, see Blackie, 75 F.3d at 723 (quoting

Mesnick, 950 F.2d at 827), it concerns the same set of record facts and relates to the same

ultimate question: whether there was a connection between Mr. Wilson's protected activity and

his termination, see Tamosaitis v. URS, Inc., 781 F.3d 468, 482 (9th Cir. 2015).  Similar to the

conclusions reached in Sections II.A. and II.B. supra, the Court concludes that there are genuine

issues of material fact concerning whether Mr. Wilson's ERA protected activity was a

"contributing factor" to his termination.  Thus, the Court also denies summary judgment of Mr.

Wilson's retaliatory discharge claim under the ERA.[4]

## IV.      CONCLUSION

Accordingly, Entergy's motion for summary judgment [ECF No. 34] is <u>DENIED</u>.

**SO ORDERED.**

September 16, 2019                                                          /s/ Allison D. Burroughs
                                                                                      ALLISON D. BURROUGHS
                                                                                      U.S. DISTRICT JUDGE

---

[4] The Court does not reach the question of which framework applies to retaliatory discharge claims under the ERA because it is not dispositive to the adjudication of summary judgment and the First Circuit has not provided guidance on the issue.  <u>Compare</u> [ECF No. 35 at 10–11 (proposing use of <u>McDonnell Douglas</u> framework)], <u>with</u> [ECF No. 44 at 4 (rejecting use of <u>McDonnell Douglas</u> framework in favor of statutory framework)].  <u>Compare</u> <u>Kahn v. U.S. Sec'y of Labor</u>, 64 F.3d 271, 277 (7th Cir. 1995) (adopting <u>McDonnell Douglas</u> framework for ERA retaliation claims), <u>with</u> <u>Sanders v. Energy Nw.</u>, 812 F.3d 1193, 1197 (9th Cir. 2016) (under "the [ERA's] burden-shifting approach to retaliation claims," "if an employee shows that his participation in a protected activity was a contributing factor in the unfavorable personnel action alleged, the burden shifts to the employer," who "can rebut the employee's prima facie case . . . if it introduces 'clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of [the employee's participation in] such behavior'" (quoting 42 U.S.C. § 5851(b)(3)(D)).